## E. W. Abbey v. The State.

*No. 810.　Decided March 18th, 1896.*

1. **Distinction Between Theft by False Pretext and the Fraudulent Conversion by Bailee.**

   A conviction for theft, by means of a false pretext, under Art. 861, Penal Code, can only be sustained upon proof that the property appropriated was acquired by means of some false pretext used to deprive the owner of the value thereof, and appropriate it to the use of the person taking, and that it was so appropriated. The fraudulent intent must be shown to have existed at the very time defendant acquired the property by means of the false pretext. Such offense requires proof of conversion, proof of false pretenses, and proof of the present fraudulent intent. Fraudulent conversion by a bailee, under Art. 877, Penal Code, is established by proof that, though defendant may have acquired the property in good faith and without any false pretense, or any intention, at the time, to appropriate it, he, after having lawfully acquired it by borrowing it from the owner, subsequently converted it to his own use with in-

tent to deprive the owner of the value of the same. In the first case, the frandulent intent must have existed at the time the possession of the property was acquired; in the second case, it is only necessary that it should have existed at the time the property was converted or appropriated with intent to deprive the owner of it.

### 2. Conversion by a Bailee—Evidence.

On a trial for a fraudulent conversion of property by a bailee, it must be proved: (1) That the defendant had possession of the property by virtue of a contract of borrowing or hiring; and (2) that he did afterward, without the consent of the owner, fraudulently convert such property to his own use.

### 3. Same—Venue of the Prosecution.

On a trial for fraudulent conversion by a bailee of a horse, and where it appeared that the defendant borrowed the horse in H. County, and sold it in the County of P. Held: There being no conversion in H. County, the venue of the prosecution was properly in P. County, in which the conversion took place, and where the offense was committed.

APPEAL from the District Court of Hood. Tried below before Hon. J. S. STRAUGHAN.

This appeal is from a conviction for the unlawful conversion, as a bailee, of a borrowed horse, the punishment assessed being five years' imprisonment in the penitentiary.

Will Edens testified, that he was the owner of the horse in question. That on the 27th of September, 1893, in Hood County, defendant borrowed the horse from him to ride to Parker County, with the understanding that he was to return him on the 7th of October following, as witness was to be married on October 8th, and would need the horse. Never heard of his horse until the next April or May. He learned that his horse was in Eastland County, whither he (witness) went and recovered him from a party who had traded defendant out of the horse in Parker County. Never gave defendant his authority or consent to sell the horse.

Riley Simms testified, that he traded with defendant for the horse in Parker County; took him to Eastland County, and there traded him to his brother; and that Will Edens made affidavit of ownership to the horse and recovered him. That defendant (Abbey) told the witness the horse was his, and never told him it belonged to Edens.

W. M. Pate, a witness for defendant, testified, that after Edens had recovered the horse, and was returning home with him, he (witness) had a conversation with Edens in which Edens told him he gave defendant permission to trade the horse.

Defendant testified, that Edens told him to trade the horse if he saw a chance to do so.

[No brief for appellant.]

*Mann Trice*, Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—Appellant in this case was convicted of fraudulenly converting a horse, after obtaining possession of the same by virtue of a contract of borrowing, in violation of Article 877 of the Revised Penal Code. From such conviction he prosecutes this appeal.

Said Article 877 reads: "Any person having possession of personal property of another by contract of hiring or borrowing, or other bailment, who shall, without the consent of the owner, fraudulently convert such property to his own use, with the intent to deprive the owner of the value of the same, shall be guilty of theft, and shall be punished as prescribed in the Penal Code for theft of like property." Art. 861, Rev. Penal Code, provides, in regard to theft generally, "that the taking must be wrongful;" so that, if the property came in possession of the person accused of theft by lawful means, the subsequent appropriation of it is not theft, but if the taking, though originally lawful, was obtained by any false petext, or with any intent to deprive the owner of the value thereof, and appropriate the property to the use and benefit of the person taking, and the same is so appropriated, the theft is complete. A conviction under this article could not be sustained unless it be shown that the accused acquired the property by some false pretext, or with the intent, at the very time of obtaining the property, of depriving the owner of the value thereof, and of appropriating the property to the use and benefit of the person taking same; and it must also be shown that the property was so appropriated. See, Porter v. State, 23 Tex. Crim. App., 295; Hornbeck v. State, 10 Tex. Crim. App., 408; Dow v. State, 12 Tex. Crim. App., 343; Morrison v. State, 17 Tex. Crim. App., 34; Atterberry v. State, 19 Tex. Crim. App., 401. The fraudulent intent must exist at the very time of acquiring the possession of the property, and no subsequent fraudulent intention of appropriating the property will suffice to constitute the original lawful taking theft. This was the rule at common law. The appellant was not indicted under Article 861, but, as before stated, under Article 877. The very facts upon which the conviction was sought are stated in the indictment. It is alleged that he was in possession of the property by virtue of a contract of borrowing, and that he appropriated the property, to-wit: a horse, to his own use, without the consent of the owner, etc. Under Article 861, it was almost impossible, especially in the absence of proof that the accused resorted to false pretenses, to prove that the accused had the fraudulent intent at the very time he acquired possession of the property. There has been a great deal written upon this subject. Our legislature, however (comprehending the difficulty of making such proof, and believing that the man who would borrow or hire a horse, and then appropriate it to his own use fraudulently, without the consent of the owner, was as bad a citizen as the man who took it without consent fraudulently), passed Article 877, under which appellant was prosecuted and convicted. Under this article, the State is not bound to prove that the accused resorted to false pretenses, or entertained, at the time he acquired possession of the horse, the intention to deprive the owner of its use, etc. He may have obtained it in good faith, without ever intending to appropriate it, or to deprive the owner of its value; but, having acquired possession by borrowing, a subsequent appropriation, such as described in Article 877, makes him guilty of theft.

Under this indictment, the following facts must be proven: That the appellant had possession of the horse by virtue of a contract of borrowing, and that he did, without the consent of the owner, fraudulently convert such property to his own use, with intent to deprive the owner of the value of the same. These things being proved, the offense is established. Under Article 861, proof that the appellant converted the property to his own use, without the consent of the owner, did not establish the fact that he intended the fraud when he obtained possession of the property. While the conversion was a necessary element of the offense, yet it alone was not sufficient to show the fraudulent intent at the time the property was acquired. Under the last act, it is necessary to show that the accused had possession of the property by virtue of the contract, and that he appropriated it, as stated in said article. It is no offense to borrow a horse; the offense consists in borrowing and converting same to his use and benefit. There is no crime of any sort until the conversion takes place. The question, therefore, is: Where a party obtains possession of a horse by borrowing or hiring, etc., in one county, and converts the same to his own use and benefit, fraudulently, in another county, in which county should he be tried? Evidently in the county in which the offense was committed. We have found that in this case there was no conversion in Hood County, but that it was in Parker County. Parker County, therefore, is the county in which the offense was committed. But the learned judge who tried this case below instructed the jury that, if the intention to convert was conceived in Hood County, that gave Hood County jurisdiction. This intention is not a crime. It is the conversion that makes the crime. The accused may have entertained the intent to convert the property in Hood County, but as he obtained possession lawfully, without intending a conversion, he committed no crime until an actual conversion had been effected. Not so under Article 861. Under that article, having obtained possession of the property by a false pretext, or having obtained it with the then present fraudulent intent, and afterwards converted it, the taking, under all of the authorities, was fraudulent; but the offense was not complete until the conversion took place. This, however, was for the purpose of establishing the intent, for the law would not, without the conversion, permit a conviction, or permit proof of the intent in the absence of the conversion. To be more explicit, it requires proof of conversion, proof of false pretenses, proof of the present fraudulent intent, all these, to make out a fraudulent taking. And no mere proof of false pretenses and proof of circumstances showing the intent to appropriate the property at the time of its acquisition would be permitted to establish the theft, without proof of the conversion. When these are all made, the county in which the property was acquired has jurisdiction. We are not discussing the character of proof necessary to constitute a conversion of the property. We are of the opinion that the District Court of Hood County had no authority to try this case. The motion for a new trial will not be considered, nor the affidavits setting

forth newly-discovered testimony. These matters are not likely to arise on another trial. The judgment is reversed, and the cause remanded.

*Reversed and Remanded.*